UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| IVA MAE ALLEN, ) | Case No. 10-40857-659 |
| ) | Judge Kathy A. Surratt-States |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |
| DEUTSCHE BANK NATIONAL ) | **Adversary No. 14-4010-659** |
| TRUST COMPANY, ) | |
| ) | |
| Plaintiff, ) | **PUBLISHED** |
| ) | |
| -v- ) | |
| ) | |
| LOM PROPERTY CORP. *et. al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The matter before the Court is Defendant LOM Property Corporation's Notice of Removal of Civil Action,[1] Motion for Summary Judgment filed by LOM Property Corp., Defendant LOM Property Corp[.]'s Memorandum in Support of Motion for Summary Judgment, Memorandum in Opposition to LOM Property Corp.'s Motion for Summary Judgment and Defendant LOM Property Corp[.]'s Reply Memorandum in Support of Its Motion for Summary Judgment.  Oral argument was presented on June 3, 2014 at which both LOM Property Corp. and Deutsche Bank National Trust Co. appeared by counsel.  The matter was then taken under submission.  Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT**:

Debtor Iva M. Allen (hereinafter "Debtor") filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code on June 18, 2004 (hereinafter "2004 Case").  Debtor owns Real Property

---

[1] Exhibit 1 to Defendant LOM Property Corporation's Notice of Removal of Civil Action is the Petition to Quiet Title and for Injunctive Relief that was filed in the Circuit Court of the Twenty-Second Judicial Circuit in St. Louis City, Missouri.

located at 6155 Westminster, St. Louis, Missouri, legally described as "the Eastern 32 Feet of Lot No. 43 in Block No. 6 of Washington Heights and in Block No. 5420 of the City of St. Louis Missouri, fronting 32 feet on the North Line of Westminster Place, by a depth northwardly of 125 Feet to an alley" (hereinafter "Property"). On or about August 23, 1996, Debtor signed and delivered to Boatmen's National Bank of St. Louis a Promissory Note in the principal sum of $150,000.00 (hereinafter "1996 Note") secured by a Deed of Trust against the Property (hereinafter "Boatmen's Deed of Trust") as well as a Deed of Trust against Debtor's nonresidential property located at 3903 Goodfellow Street, St. Louis, Missouri (hereinafter "Goodfellow Property"). The Boatmen's Deed of Trust was recorded on September 24, 1996 in Book 1238, Page 2038 of the St. Louis City Recorder of Deeds. The Deed of Trust for the Goodfellow Property was recorded on September 24, 1996 in Book 1238, Page 2027 of the St. Louis City Recorder of Deeds.

Boatmen's National Bank of St. Louis was purchased in late 1996 by NationsBank, which later merged with BankAmerica to form Bank of America, N.A. (hereinafter "Bank of America"). Therefore, Bank of America acquired the 1996 Note, the Boatmen's Deed of Trust and the Deed of Trust for the Goodfellow Property.

On September 14, 2001, by way of Deed of Release, Bank of America released its Deed of Trust that encumbered the Goodfellow Property as security for the 1996 Note (hereinafter "First Goodfellow Deed of Release"). The First Goodfellow Deed of Release is recorded in Book 1720, Page 6042 in the St. Louis City Recorder of Deeds.

On June 5, 2002, the 1996 Note and the Boatmen's Deed of Trust were sold and assigned to WAMCO XXX Ltd (hereinafter "WAMCO"). WAMCO did not record the assignment of the Boatmen's Deed of Trust at this time.

First City Servicing Corporation (hereinafter "First City") as servicing agent for WAMCO is the predecessor to Defendant LOM Property Corporation (hereinafter "LOM"). First City filed Claim Number 4-1 in the 2004 Case in which First City claimed that WAMCO held a Secured Claim in the

amount of $178,947.39 which was secured by the Property which First City estimated to be worth $215,000.00. Attached to Claim 4-1 was the Boatmen's Deed of Trust, as well as the 1996 Note and the unrecorded assignment of the Boatmen's Deed of Trust from Bank of America to WAMCO. First City filed an Amended Motion for Relief from Automatic Stay which states when the Boatmen's Deed of Trust was recorded and mentions that the Boatmen's Deed of Trust was assigned to WAMCO.

On October 19, 2004, First City was granted relief from the automatic stay by stipulation between Debtor and First City (hereinafter "Relief from Stay Stipulation").[2] In the Relief from Stay Stipulation, Debtor and First City agreed that First City held a lien against the Property, the lien was partially unsecured, and as part of the Relief from Stay Stipulation, Debtor would grant First City a Deed of Trust against the Goodfellow Property in the amount of $40,000.00 to secure the unsecured portion of the 1996 Note. In the 2004 Case, Creditor Select Portfolio Servicing, Inc. filed Claim 1-1, a Secured Claim in the amount of $88,792.72 which was secured by the Property.[3] Debtor had not made any payments to First City in over one (1) year at the time of the Relief from Stay Stipulation.[4]

At Debtor's request, a series of Deeds of Release were executed by Bank of America after the assignment of the Boatmen's Deed of Trust. First, on December 23, 2004, Kathy Clark, Assistant Vice President of Bank of America, executed a Deed of Release of the Boatmen's Deed of Trust (hereinafter the "2004 Deed of Release"). The 2004 Deed of Release was never recorded. Second, on January 14, 2005, Charlene Covil, Assistant Vice President of Bank of America, executed a Deed of Release which contained conflicting information as to the Deed of Trust it

---

[2] See Docket Entry Number 33 of Case Number 04-47897.

[3] See Claim 1-1, 2004 Case; *see also* Exhibit Q to Response to LOM Property Corp.'s Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment and Statement of Additional Material Controverted Facts Making Summary Judgment Inappropriate.

[4] Debtor filed a prior Chapter 13 case on September 2, 2003, Case Number 03-51650, on the eve of Wamco XXX Ltd's scheduled foreclosure sale. Case Number 03-51650 was dismissed on the Chapter 13 Trustee's oral motion in accordance with Section 1307(c) on March 19, 2004. After some delay, a new foreclosure sale was set for May 28, 2004, but was continued to June 18, 2004. The 2004 Case was commenced on June 18, 2004, the day of the continued foreclosure sale.

purported to release (hereinafter "January 2005 Deed of Release").  The January 2005 Deed of Release described the subject property to be released as "Lots 1-5 in Block 5 of Home Site and in City Block 5721 of the City of St. Louis.  Together fronting 1567 ft. more or less, on the West Line of Goodfellow Blvd by a depth westardly of 6014 ft on the South Line of Lot 1 and 5824 Ft on the North Line of Lot 5, to an alley, and having an aggregate width thereon 148 ft 8 ½ inches, bounded on the south by Ferris Avenue" which is the legal description for the Goodfellow Property.  The January 2005 Deed of Release however referenced indebtedness mentioned in a Deed of Trust executed by Debtor and recorded in Book 1238 at page 2038, which is the Boatmen's Deed of Trust for the Property, and not a Deed of Trust for the Goodfellow Property which was recorded in Book 1238, Page 2027 of the St. Louis City Recorder of Deeds. The January 2005 Deed of Release was recorded on January 24, 2005 in Book 01242005, Page 296 of the St. Louis City Recorder of Deeds. Third, on March 24, 2005, Kathy Clark executed a Deed of Release of the Boatmen's Deed of Trust, which was recorded on April 5, 2005 in Book 04052005 at Page 200 of the St. Louis City Recorder of Deeds (hereinafter "April 2005 Deed of Release").  The 2004 Deed of Release, the January 2005 Deed of Release and the April 2005 Deed of Release were all executed by Bank of America without the knowledge or consent of either First City or WAMCO.

On February 16, 2005, Debtor filed a Motion For Permission to Incur Debt to Refinance (hereinafter "Refinance Motion") in which Debtor stated that she had the opportunity to refinance the debt on the Property with sufficient funds received after *payment of valid liens against the property* to pay in full all unsecured claims in the 2004 Case.[5]  Debtor stated that any excess funds received through the refinance would be paid over to the Chapter 13 Trustee for distribution to Debtor's unsecured creditors.  Based on these representations, the Refinance Motion was granted on February 17, 2005.

---

[5] *See* Motion for Permission to Incur Debt to Refinance, ¶ 2 *(emphasis added)*.

-4-

On March 21, 2005, Debtor executed and delivered a Promissory Note in the amount of $244,000.00 (hereinafter "2005 Note") to Option One Mortgage Corporation (hereinafter "Option One"), secured by a Deed of Trust recorded on March 30, 2005 in Book 03302005, Page 214 of the St. Louis City Recorder of Deeds (hereinafter "2005 Option One Deed of Trust"). Old Republic, the closing agent for Option One, was provided with the unrecorded 2004 Deed of Release and the defective January 2005 Deed of Release at the time the 2005 Note was closed. Debtor did not initially pay any of the funds received from Option One to WAMCO. Debtor did use the Option One funds to satisfy a secured lien against the Property held by Creditor Select Portfolio Servicing, Inc.[6]

On May 3, 2005, WAMCO commenced Adversary Proceeding 05-4109 in which WAMCO requested that this Court deem the Deeds of Release executed by Bank of America void, reinstate WAMCO's lien on the Property and subordinate all subsequent liens executed by Debtor on the Property.[7] On August 8, 2005, Affidavit of Bank of America was filed in which Bank of America affirmed that the 1996 Note and the Boatmen's Deed of Trust once held by Bank of America were sold and assigned to WAMCO on June 5, 2002 and therefore the 2004 Deed of Release, the January 2005 Deed of Release and the April 2005 Deed of Release were executed in error (hereinafter "August 2005 Bank of America Affidavit").

On August 12, 2005, Debtor and WAMCO settled Adversary Number 05-4109 and a stipulated order was entered whereby Debtor agreed to pay WAMCO $50,000.00, the remainder of the debt to WAMCO would be excepted from discharge, the Deeds of Release executed by Bank of America would be null and void, WAMCO would be granted a first priority lien against the Goodfellow Property and the Boatmen's Deed of Trust held by WAMCO would be reinstated as the

---

[6] See 2004 Case, Objection to Claim and Notice of Objection, ¶ 2. Debtor objected to Creditor Select Portfolio Servicing, Inc.'s Claim 1-1 because Claim 1-1 in the amount of $88,792.72 was paid in full by Debtor's refinance with Option One; see also 2004 Case, Response to Objection of Claim filed by Creditor Select Portfolio Servicing, Inc. which acknowledges that Claim 1-1 had been paid in full.

[7] See Complaint, Adversary Number 05-4109.

First Priority Deed of Trust (hereinafter "2005 Adversary Stipulation").[8]  The 2005 Adversary Stipulation was recorded on August 26, 2005 in Book 08262005, Page 160, of the St. Louis City Recorder of Deeds.  Option One was not a party to Adversary Number 05-4109 or the 2005 Adversary Stipulation.  WAMCO received the $50,000.00 pursuant to the 2005 Adversary Stipulation.[9]  Debtor received a discharge for successful completion of the 2004 Case on September 6, 2005 and the 2004 Case was closed on September 29, 2005.

On September 13, 2005, WAMCO recorded the June 5, 2002 assignment of the Boatmen's Deed of Trust from Bank of America in Book 09132005, Page 80 of the St. Louis City Recorder of Deeds.

On March 30, 2006, Debtor executed and delivered a Note (hereinafter "2006 Note") and Deed of Trust in the amount of $274,500.00 to Option One (hereinafter "2006 Option One Deed of Trust").  The 2006 Option One Deed of Trust was recorded on April 6, 2006 in Book 04062006, Page 347 of the St. Louis City Recorder of Deeds.  Funds derived from the 2006 Note were used to satisfy the 2005 Note.   The 2006 Option One Deed of Trust replaced the 2005 Option One Deed of Trust.  Option One's title agent in connection with the 2006 Note, NETCO Inc., had a copy of the recorded 2005 Adversary Stipulation and was aware of the recorded assignment of the Boatmen's Deed of Trust from Bank of America to WAMCO.

The Boatmen's Deed of Trust was assigned by WAMCO to LOM on November 21, 2005, and recorded on January 17, 2007 in Book 01172007, Page 307 of the St. Louis City Recorder of Deeds.  On April 3, 2009, Option One assigned the 2006 Deed of Trust to Plaintiff Deutsche Bank National

---

[8] *See* Stipulation and Order on Wamco XXX Ltd.'s Complaint to Void Releases, Reinstate Liens for Sanctions, to Deny Discharge and Motion for Relief from Automatic Stay.

[9] LOM and Deutsche dispute whether WAMCO intended to be in second lien position against the Property after Debtor refinanced with Option One based on evidence of settlement negotiations that preceded the terms of the 2005 Adversary Stipulation.  This is not a genuine issue of material fact because under Rule 408 of the Federal Rules of Evidence, settlement negotiations are inadmissible, and none of the narrow exceptions apply.   The 2005 Adversary Stipulation is the best evidence of the parties' intent.

Trust Co. (hereinafter "Deutsche").  This assignment from Option One to Deutsche was recorded on September 26, 2012 in Book 09262012, Page 39 of the St. Louis City Recorded of Deeds.

The Missouri Department of Revenue may claim in interest in the Property by virtue of a Certificate of Tax Lien against the Property dated July 24, 2009.  The Certificate of Tax Lien was recorded on July 27, 2009 in Book 07272009, Page 322 of the St. Louis City Recorded of Deeds. The Missouri Division of Employment Security may claim an interest in the Property by virtue of a Transcript of Judgment entered on or around February 6, 2012 in Case No. 1222-TJ0081.

On February 1, 2010, Debtor filed another Voluntary Petition under Chapter 13 of the Bankruptcy Code (hereinafter "2010 Case").  Debtor's Amended Schedule D, filed on February 15, 2010, indicates that the servicer for Deutsche, American Home Mortgage Servicing, possessed a first priority lien on the Property and that LOM was fully secured by way of a first priority lien on the Goodfellow Property only.  On March 10, 2011, Deutsche was granted relief from the automatic stay after Debtor failed to meet her obligations on a stipulation which would have permitted Debtor to satisfy post-petition delinquencies due to Deutsche over a six (6) month period.  LOM did not seek relief from the automatic stay in the 2010 Case.  On June 7, 2012, Debtor's 2010 Case was dismissed for Debtor's failure to make plan payments and the 2010 Case was closed on July 12, 2012.

This Court granted LOM's Motion to Reopen the 2010 Case on December 23, 2013, for this Court to determine the present lien priority dispute between LOM and Deutsche.  Deutsche seeks to quiet title and enjoin LOM from foreclosing on the Property.  LOM seeks summary judgment that it holds the first priority lien against the Property and therefore cannot be enjoined from foreclosing on the Property.  LOM argues that at the time of the 2005 Note, Option One was aware of Debtor's 2004 Case and therefore had constructive notice of Debtor's Schedules and the Claim Registry, all of which revealed the existence of the Boatmen's Deed of Trust and WAMCO's interest in the Property.  LOM further argues that Option One knew the legal description of the Property and

therefore should have noticed that the January 2005 Deed of Release included the legal description for the Goodfellow Property before execution and delivery of the 2005 Note and 2005 Option One Deed of Trust.

Deutsche argues that the 2006 Option One Deed of Trust replaced the 2005 Option One Deed of Trust, which are now held by Deutsche, and therefore, under the replacement mortgage doctrine, Deutsche now holds the first priority lien against the Property. Deutsche further argues that there are genuine issues of material fact that preclude summary judgment, especially before discovery is conducted, because Debtor may have engaged in fraud to procure the 2004 Deed of Release and the January 2005 Deed of Release which Option One relied upon. Deutsche also argues that it would be inequitable for LOM to benefit from Debtor's fraud through receipt of the $50,000.00 and maintain a first priority lien at Deutsche's expense.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334 (2010) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) (2010). Venue is proper in this District under 28 U.S.C. § 1409(a) (2010).

## CONCLUSIONS OF LAW

The Court must determine whether under Missouri law, Deutsche or LOM holds the first priority lien against the Property. The Court rules as follows.

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citing Fed. R. Civ. P. 56(c)(2)). The movant has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

A genuine issue exists if the record taken as a whole would lead a rational trier of fact to find for the nonmovant. *Id.* (citing *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009)). Once the movant satisfies that burden, the burden shifts to the nonmovant. *Id.* For the nonmovant to satisfy its burden it must do more than simply show some metaphysical doubt exists as to the material facts; the nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). A court must view all facts in a light most favorable to the nonmovant, and the nonmovant must receive the benefit of all reasonable inferences drawn from the facts. *Bank of America, N.A. v. Armstrong (In re Armstrong)*, 498 B.R. 229, 233 (B.A.P. 8th Cir. 2013) (citing *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000)).

Missouri Statute Section 442.380 states that "every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner herein prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated." Mo. Rev. Stat. § 442.380 (2010). Missouri Statute Section 442.390 states that "every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." Mo. Rev. Stat. § 442.390 (2010).

Missouri Statute Section 443.035.2 states:

> Any person who acquires an interest in or a lien upon real property for value and without notice of an unrecorded assignment of a security instrument recorded on or after January 1, 1986, and who has relied upon a release of such security instrument executed by the party last shown of record to be the owner thereof, shall acquire the interest in or lien upon such real property free from the lien of the security instrument to the same extent as if the release upon which reliance was placed had been executed by the lawful holder of the debt or other obligation secured by such security instrument.

Mo. Rev. Stat. § 443.035.2 (2010).

The Replacement Mortgage Doctrine states that:

> (a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except
>
> (1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or
>
> (2) to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.
>
> (b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in Subsection (c).
>
> (c) If the mortgagor and mortgagee reserve the right in a mortgage to modify the mortgage or the obligation it secures, the mortgage as modified retains priority even if the modification is materially prejudicial to the holders of junior interests in the real estate, except as provided in Subsection (d).
>
> (d) If a mortgage contains a reservation of the right to modify the mortgage or the obligation as described in Subsection (c), the mortgagor may issue a notice to the mortgagee terminating that right. Upon receipt of the notice by the mortgagee, the right to modify with retention of priority under Subsection (c) becomes ineffective against persons taking any subsequent interests in the mortgaged real estate, and any subsequent modifications are governed by Subsection (b). Upon receipt of the notice, the mortgagee must provide the mortgagor with a certificate in recordable form stating that the notice has been received.

Restatement 3d on Property: Mortgages, § 7.3 (1997). Missouri has adopted the Restatement 3d on Property: Mortgages, with respect to the analysis of the priority of replacement mortgages. *Burney v. McLaughlin,* 63 S.W.3d 223, 230-232 (Mo. App. 2001); *Golden Delta Enters., LLC. v. US Bank,* 213 S.W.3d 171, 176 (Mo. App. 2007).

Missouri is a "first to record" state, meaning that a mortgagee, the entity that lends money

to a borrower for the purpose of purchasing real property, is only secured by the real property when the corresponding deed of trust is recorded. Until recorded, a deed of trust to secure a note is only valid between the parties thereto. *Bremen Bank and Trust Co. v. Muskopf,* 817 S.W.2d 602, 608 (Mo. App. 1991) (citing *Godwin v. Gerling,* 239 S.W.2d 352, 360 (Mo. 1951)).

"In Missouri a purchaser is charged with constructive notice of everything in prior recorded deeds, which go to make up the chain of title under which he holds." *In re Iowa-Missouri Realty Co., Inc.,* 86 B.R. 617, 620 (Bankr. W.D. Mo. 1988) (citing *Black v. Banks,* 37 S.W.2d 594, 598 (Mo. 1931)). Any instrument which lies outside of the chain of title does not impart notice to a purchaser of realty. *Knutson v. Christeson,* 684 S.W.2d 549, 551-52 (Mo. App. 1984). "Notice may be imparted to a prospective purchaser by actual or constructive notice of facts which would place a reasonably prudent person on inquiry as to the title he is about to purchase." *In re Iowa-Missouri Realty Co., Inc.,* 86 B.R. at 620 (citing *Johnson v. Stull,* 303 S.W.2d 110, 118 (Mo. 1957)). Constructive notice can take the form of notice of a discrepancy which thereby creates a duty of inquiry. *In re Whitlow,* 116 B.R. 158, 160 (Bankr. W.D. Mo. 1990). If inquiry into a discrepancy would reveal that a deed of release was executed by mistake, the purchaser is bound with constructive notice that the deed of release was executed and recorded by mistake. *Id.* Reformation of a defective instrument is not proper if the rights of a bona fide purchaser will be prejudiced. *In re Iowa-Missouri Realty Co., Inc.,* 86 B.R. at 621 (citations omitted).

"The recording of a judgment, properly entered and docketed, is notice of what it contains or recites, as well as such facts as might be fairly inferred from its recital, and such record carries with it constructive notice of the facts therein expressly recited as well as such facts as might be fairly inferred from its recitals." *Knutson,* 684 S.W.2d at 552 (citing *Inter-River Drainage Dist. of Missouri v. Henson,* 99 S.W.2d 865, 873 (Mo. App. 1936)). Two parties cannot agree to sever or subordinate the lien of a third party without that third party's consent. *In re Gateway Center Bldg. Investors, LTD.,* 95 B.R. 647, 653 (Bankr. E.D. Mo. 1989).

A court of equity cannot create rights that do not exist. *Thompson v. Chase Manhattan Morg. Corp.,* 90 S.W.3d 194, 204 (Mo. App. 2002) (citing *Fleming–Gilchrist Const. Co. v. McGonigle,* 338 Mo. 56, 89 S.W.2d 15, 18 (1935)). Ordinarily, equity cannot be used as a mechanism to award the complaining party who had the means and ability to avoid its harm. *Id.* at 205 (citing *Cozart v. Mazda Dist. Inc.,* 861 S.W.2d 347, 352 (Mo.App.1993)). "Equity aids the vigilant, not those who slumber on their rights." *Id.* (citing *Townsend v. Maplewood Inv. & Loan Co.,* 351 Mo. 738, 173 S.W.2d 911, 913 (1943) (citation omitted)).

The Court views the state of affairs at the time that the 2005 Option One Deed of Trust was recorded to be determinative. At that point, the 1996 Note was executed and was secured by both the Boatmen's Deed of Trust and a separate Deed of Trust for the Goodfellow Property. Bank of America acquired an interest in the Boatmen's Deed of Trust. Bank of America executed and recorded a Deed of Release with regard to the Goodfellow Property, therefore, the Property was only encumbered by the Boatmen's Deed of Trust. The Boatmen's Deed of Trust was assigned by Bank of America to WAMCO. WAMCO did not record the assignment of the Boatmen's Deed of Trust. WAMCO was aware it did not record the Boatmen's Deed of Trust. Debtor commenced the 2004 Case. Upon Debtor's request, despite the assignment by Bank of America to WAMCO, Bank of America executed the 2004 Deed of Release which was not recorded, and executed and recorded the January 2005 Deed of Release which contained conflicting information in that the Property is referenced but the legal description of the Goodfellow Property is stated. Debtor then filed the Refinance Motion in which Debtor stated that Debtor had the opportunity to refinance the valid liens against the Property with sufficient excess funds received to pay in full all unsecured claims filed in the 2004 Case.[10] Debtor refinanced with Option One in the amount of $244,000.00 and therefore executed the 2005 Note and the 2005 Option One Deed of Trust. Option One's closing agent, Old

---

[10] Motion for Permission to Incur Debt to Refinance, ¶ 2.

-12-

Republic, had actual knowledge of the 2004 Case, the unrecorded 2004 Deed of Release and the defective January 2005 Deed of Release.  The funds received from Option One were used to satisfy the lien against the Property held by Creditor Select Portfolio Servicing, Inc., in the approximate amount of $88,792.72 and no Option One funds were initially used to satisfy the debt owed to WAMCO.  Option One recorded the 2005 Option One Deed of Trust.  These are the determinative events in chronological order.

Also of some relevance is that a mere three (3) days after the 2005 Option One Deed of Trust was delivered, Bank of America executed the April 2005 Deed of Release, which was recorded shortly thereafter.  After WAMCO commenced Adversary Proceeding 05-4109 to reinstate its lien against the Property, WAMCO and Debtor entered into the 2005 Adversary Stipulation without any knowledge to Option One, which stated that $50,000.00 of the proceeds received from Option One would be paid to WAMCO, that WAMCO would have a First Priority Deed of Trust against the Property and that WAMCO would be granted a Deed of Trust which would encumber the Goodfellow Property.  WAMCO received the $50,000.00 in proceeds from Option One.  Also, Bank of America executed the August 2005 Bank of America Affidavit which affirmed that the 2004 Deed of Release, the January 2005 Deed of Release and the April 2005 Deed of Release were executed in error. WAMCO recorded the 2005 Adversary Stipulation.  WAMCO recorded the assignment of the Boatmen's Deed of Trust.  Option One refinanced the 2005 Note and executed the 2006 Note in the amount of $274,500.00 with actual knowledge of the 2005 Adversary Stipulation.

WAMCO knew it did not record the Boatmen's Deed of Trust assignment, however there is no requirement that assignments be recorded in Missouri.  Irrespectively, this priority dispute might have been avoided if WAMCO rather than Bank of America was the last party shown of record with an interest in the Property at the time of execution of the 2005 Note.

When WAMCO commenced Adversary Proceeding 05-4109 to reinstate its lien against the Property, WAMCO could have included Option One and therefore made any judgment or settlement

of the matter binding on all parties affected, namely Debtor, WAMCO and Option One. Instead, WAMCO only sought to include Debtor and therefore, the 2005 Adversary Stipulation, as agreed by Debtor and WAMCO only, can only be legally binding as between Debtor and WAMCO.

When Debtor sought a loan from Option One, it was Option One's duty to inquire as to the liens of record against the Property. All were aware that Debtor needed the approval of this Court to obtain any loan from Option One. In the 2004 Case, it is clear that WAMCO asserted a lien against the Property and that Bank of America was not a creditor of Debtor. Further, Option One, and its title agent Old Republic, were presented with the 2004 Deed of Release from Bank of America which was not recorded and the January 2005 Deed of Release which contained conflicting information. The culmination of the above is sufficient to signal to Option One that there are discrepancies that warranted further inquiry prior to closing the 2005 Note. Instead, Option One closed the 2005 Note and sought to remedy its lack of diligence *ex post facto* to no avail because by the time the 2006 Note was executed, the April 2005 Deed of Release was challenged by the recorded assignment of the Boatmen's Deed of Trust and the recorded 2005 Adversary Stipulation.

This Court concludes upon application of Missouri Statute Section 443.035.2 that Option One, which acquired an interest in the Property *with constructive* notice of LOM as successor of WAMCO's unrecorded assignment of the Boatmen's Deed of Trust which was recorded after January 1, 1986, relied upon a *defective* release of the Boatmen's Deed of Trust which was executed by the party last shown of record to be the owner thereof, Bank of America. As such, Missouri Statute Section 443.035.2 does not resolve the matter in favor of Deutsche due in large part to Option One's knowledge, both actual and constructive, of WAMCO's interest in the Property, and Option One's subsequent failure to inquire. The culmination of WAMCO's involvement and assertion of an interest in the Property in the 2004 Case, Bank of America's absence from the 2004 Case and the defective legal description in the January 2005 Deed of Release, should have caused pause and Option One should have engaged in further inquiry before the 2005 Note was closed. As such,

-14-

Option One had both actual and constructive notice of facts which would have placed it on inquiry as to the chain of title of the Property. Option One's actual and constructive knowledge therefore precludes any conclusion that Option One would be unduly prejudiced by reformation of the Boatmen's Deed of Trust.

A judgment in equity in Deutsche's favor as successor of Option One is not appropriate where the 2005 Note and 2005 Option One Deed of Trust should have never been executed and delivered based on the information available prior to the execution thereof. Moreover, it was evident that the January 2005 Deed of Release was defective because the April 2005 Deed of Release was sought a mere three days after delivery of the 2005 Option One Deed of Trust.

Likewise, the 2006 Note and 2006 Option One Deed of Trust were executed and delivered with irrefutable knowledge of WAMCO's asserted interest in the Property which should again have prompted further inquiry by Option One. The 2005 Adversary Stipulation was not binding on Option One because Option One was not a party to those negotiations, however, when the 2005 Adversary Stipulation was recorded, a duty to inquire was borne to Option One. As such, Option One had the ability to avoid its present harm and for these reasons, the Replacement Mortgage Doctrine does not apply. The repercussions of Debtor's actions to procure the Deeds of Release and the diligence of Option One's title or closing agents cannot be equitably placed upon LOM because such a result is not supported under Missouri law.

Therefore, there are no genuine issues of material fact and LOM is entitled to judgment as a matter of law. By separate Order, LOM's Motion for Summary Judgment will be granted and title will be quieted in favor of LOM and therefore LOM cannot be enjoined from foreclosing on the Property.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: October 15, 2014
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

LOM Property Corp.
22287 Mulholland Highway
Suite 359
Calabasas, CA 91302

Iva M. Allen
6155 Westminister Pl.
St. Louis, MO 63112

Grant Joseph Mabie
Sauerwein Simon P.C.
147 North Meramec Avenue
Clayton, MO 63105

Jennifer M. West
South & Associates, P.C.
800 Market Street
Suite 1660
St. Louis, MO 63101